IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

RICHARD L. BLAKE and
PENNY L. BLAKE,

           Plaintiffs,

v.                                        CIVIL ACTION NO.   3:19-0847
                                                (consolidated with 3:19-859 through 873)

COLUMBIA GAS TRANSMISSION, LLC and
TRANSCANADA POWER CORP.,

           Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is a Second Motion to Dismiss by Defendants Columbia Gas Transmission, LLC and Transcanada Power Corp. ECF No. 39. The Court held a hearing on the motion on February 8, 2022. For the reasons stated at that hearing and as explained below, the Court **GRANTS** the motion.

**I.
BACKGROUND**

As the Court previously has explained, this case is one of sixteen similar cases that were removed from state court and consolidated by this Court. *See Blake v. Columbia Gas Trans., LLC*, No. 3:19-cv-0847, 2021 WL 951705, *1 (Mar. 12, 2021).[1] In these actions, Plaintiffs generally allege that their properties were negatively impacted by modifications and additions Defendants made to a nearby natural gas compressor station located in Ceredo, West Virginia (the

---

[1] The Court designated *Blake* as the lead case.

"Ceredo Compressor Station"). Broadly speaking, Plaintiffs claim the changes made to the compressor station resulted in increased "noise, light, dust, debris, and odors." *Compl.* ¶12, in part.

Approximately nine months after removal, Defendants filed their first Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. In March 2021, the Court granted the motion with respect to noise levels because those levels were authorized by the Certificates issued by the Federal Energy Regulatory Commission (FERC). *Blake*, 2021 WL 951705, *3. The Court noted that, if Plaintiffs believed the noise levels limits were too high, they first should have exercised their rights through the administrative process and not filed a collateral attack in the district court. *Id*. On the other hand, the Court found the exact nature of Plaintiffs' complaints of "light, dust, debris and odors" was unclear. Defendants also did not make any specific arguments as to why those claims should be dismissed, and the Court stated it was unknown how they factored into FERC's Certificates and regulatory process. *Id.* Therefore, based upon the record before it, the Court declined to dismiss those claims, albeit the Court recognized those claims "may very well . . . fall within [FERC's] Certificates' parameters and/or scope of preemption under [the Natural Gas Act]." *Id*. Defendants now argue in the pending motion that these remaining claims also must be dismissed because Plaintiffs failed to exhaust, and the Court lacks subject matter jurisdiction.

## II.
## STANDARD OF REVIEW

As with their prior motion, Defendants seek dismissal pursuant to Rule 12(b)((1) of the Federal Rules of Civil Procedure. Challenges to jurisdiction under Rule 12(b)(1) may be raised in two distinct ways: "facial attacks" and "factual attacks." *Thigpen v. United States*, 800 F.2d 393, 401 n.15 (4th Cir. 1986) (Murnaghan, C.J., concurring). A "facial attack" questions

whether the allegations in the complaint are sufficient to sustain the court's jurisdiction. *Id*. If a "facial attack" is made, the court must accept the allegations in the complaint as true and decide if the complaint is sufficient to confer subject matter jurisdiction. *Id*. On the other hand, a "factual attack" challenges the truthfulness of the factual allegations in the complaint upon which subject matter jurisdiction is based. In this situation, a "district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982); *Trentacosta v. Frontier Pac. Aircraft Indus.*, 813 F.2d 1553, 1558 (9th Cir. 1987)). To prevent dismissal, "the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." *Id.* (citations omitted). A dismissal only should be granted in those instances in which "the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.* (citation omitted).

### III.
### DISCUSSION

In their current motion, Defendants assert that Plaintiffs' claims of "light, dust, debris, and odors" are covered with specificity by FERC's Order Issuing Certificates and Approving Abandonment (Certificate Order) and the Final Environmental Impact Statement (EIS). Thus, Defendants contend Plaintiffs were required to pursue administrative remedies, which they failed to do. In their Response, Plaintiffs make no specific arguments in support of their claims of "dust, debris, and odors." Instead, they focus on the visual impacts that occurred as a result of the changes to the compressor station. Plaintiffs allege that Defendants created a nuisance by making "significant alteration of the landscape through the removal of trees and vegetation which had created natural buffers between the prior facility and [their] homes [that] have caused interruptions

in [their] use and enjoyment of their property." *Pls.' Resp. in Opp. to Defs.' Sec. Mot. to Dis.*, at 4, ECF No. 41. However, Defendants argue this claim clearly is a collateral attack just like their noise claim.

In support, Defendants point to language in both the Certificate Order and the EIS that addresses altering the landscape around the compressor station. For instance, in the "Visual Impacts" section of the Certificate Order, it discussed—and approved—the removal and alteration of visual buffers. To this point, paragraph 81 of the Certificate Order provides:

> Construction and operation of compressor stations and meter stations will result in visual resource impacts. Construction of new aboveground facilities, at existing and newly-sited aboveground facilities, will result in conversion of 133.6 acres of forest to industrial land, thereby potentially exposing nearly residences and businesses to new views of the facilities. Some of these residences have existing visual buffers that will screen their view of the aboveground facilities, while others will experience altered view sheds. In general, visual impacts will be greatest for residences and businesses closest to the above ground facilities. The Lone Oak Compressor Station, Oak Hill Compressor Station, R-System Regulator Station, Grayson Compressor Station, and Means Compressor Station will be less than 0.25 mile from the nearest residence.

*Cert. Order* ¶81 at 29 (Jan. 19, 2017) (footnotes omitted), ECF No. 40-1. The Certificate Order also followed the recommendations of the EIS and directed Columbia to "follow the construction procedures and mitigation measures described in its application and supplements, including responses to staff data requests and as identified in the EIS, unless modified by Order." *Id*. at app. B ¶1. In the EIS, it discussed the fact there would be modifications to the Ceredo Compressor Station, and it recognized that there will be both temporary and permanent "new areas of land disturbance." *EIS* 4-125, 4-126, ECF No. 40-3; *see also EIS* 2-19 (stating that the proposal expansion of the existing fence lines at the Ceredo Compressor Station will result "in 2.9 acres of

permanent impacts"); *EIS* 4-70 (discussing the expanded fence line impacting 2.9 acres); *EIS* 4-81 (finding construction and modifications of compressor stations will have "permanent forest impacts"). The EIS clearly discussed the removal of forested land and vegetation and concluded that "visual impacts on residences close to the aboveground facilities would be permanent." *EIS* at ES-9.

Although Plaintiffs assert the Certificate Order fails to set specific standards for visual resource impacts, it is clear that the EIS both contemplated and approved the removal and alterations of visual buffers. *See EIS* 5-1 (concluding impacts to vegetation will occur, but "if the proposed Project is constructed and operated in accordance with applicable laws and regulations, the mitigating measures discussed in this final EIS, and our recommendations, these impacts would be reduced to less than significant levels"). Additionally, FERC required the appointment of an environmental inspector and an independent third-party compliance monitoring program to ensure that there was compliance. *EIS* 2-33 (covering environmental inspection); *EIS* 2-35 (discussing Third-Party Compliance Monitoring).

As this Court explained in its earlier Memorandum Opinion and Order with respect to noise, the Natural Gas Act, 15 U.S.C. § 717 *et seq.*, requires that "natural-gas companies, such as Defendants, may not 'construct[]' or 'operate' any facilities subject to FERC's jurisdiction unless they have first received 'a certificate of public convenience and necessity issued by the Commission authorizing such acts or operations.'" *Blake*, 2021 WL 951705, at *2, citing 15 U.S.C. § 717f(c). In this case, Defendants applied for a certificate, submitted extensive data in support of the certificate and, upon thorough review, FERC issued the certificate. As visual impacts were

plainly considered and approved by FERC, Plaintiffs' remedy, as with noise, was to seek administrative review and exhaust their administrative remedies. 15 U.S.C. § 717r. Thereafter, if Plaintiffs were unsatisfied with the result, the next step was for Plaintiffs to seek review by the Fourth Circuit Court of Appeals. 15 U.S.C. § 717r(b) (providing, in part, "[a]ny party to a proceeding under this chapter aggrieved by an order issued by the Commission in such proceeding may obtain a review of such order in the court of appeals of the United States"). This Court simply lacks subject matter jurisdiction to address what amounts to be a collateral attack that the approved visual impacts constitute a common law nuisance.

Additionally, although the Court found in its earlier decision that the precise nature of Plaintiffs' remaining claims of "dust, debris, and odors" were unclear, Plaintiffs failed to take the opportunity to address or clarify these claims with any specificity. Nonetheless, the Court finds these vague allegations appear to fall within Plaintiffs' claims that "Defendants' design, planning, construction and operation of the Ceredo Compressor station has resulted in a substantial and unreasonable interference with the Plaintiffs' private use and quiet enjoyment of their property." *Compl.* ¶11; *see also id.* ¶12 (stating, in part, "Plaintiffs have experienced disruptions to their daily lives including, but not limited to . . . dust, debris and odors which have emanated from the Defendants' Ceredo Compressor Station"). However, these issues seem mostly to be temporary problems during the construction phase and, like noise and visual impacts, they were contemplated and approved by the Certificate Order and the EIS. *See, e.g., Cert. Order*, at 31 (recognizing the final EIS addressed mitigation measures for such things as air quality, dust, and traffic); *EIS* 4-132 (covering clearing debris from roadways); *EIS* 4-149 (discussing "Transportation and Traffic");

*EIS* 4-172 (addressing "Construction Emissions, Mitigations, and Impacts). Therefore, the Court finds it also lacks jurisdiction over these claims.

## IV.
## CONCLUSION

Accordingly, for the foregoing reasons, the Court **GRANTS** Defendants' Second Motion to Dismiss (ECF No. 39) and **DISMISSES** the remainder of Plaintiffs' claims.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: March 22, 2022

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE